STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| Secretary, Vermont Agency of | | |
| Natural Resources, | } | |
| | } | |
| v | } | Docket No. 169-9-99 Vtec |
| | } | |
| Clarence and Donna Nelson, | } | |
| Respondents. | | |

Decision and Order

On September 14, 1999, the Secretary of the Vermont Agency of Natural Resources (ANR) issued an administrative order pursuant to 10 V.S.A. § 8008 regarding Respondents, who timely requested a hearing in Environmental Court. Respondents are represented by Paul S. Gillies, Esq.; and the Secretary of the Agency of Natural Resources is represented by Catherine Gjessing, Esq.

The Court extended the time for the hearing for good cause at the request of and by agreement of the parties, to accommodate their settlement discussions.

The statutes, rules and permits applicable to this matter are 4 V.S.A. Chapter 27; 10 V.S.A. § 1953 and Environmental Protection Rules; 10 V.S.A. § 6615(b); 10 V.S.A. Chapter 151 (Act 250) and Environmental Board Rule 2(G); 10 V.S.A. Chapter 201; 10 V.S.A. § 8012(c)(2).

Findings

Respondents Clarence and Donna Nelson own property on Route 25 in West Topsham, on which is located a building that housed " Nelson' s Country Store and Deli," a business that they owned and operated. In July of 1990, they removed two underground gasoline storage tanks from the property. During excavation and removal of the tanks, it became apparent that one tank had released gasoline into the subsurface soils and the groundwater at the property.

Respondents hired a firm to conduct a site investigation and to monitor the groundwater at the property. In July of 1990, Respondents were directed to install monitoring wells to determine the extent of the contamination from the leaking underground storage tank. Respondents have paid $8,547 of the $10,000 deductible related to the cleanup of this contamination. During the installation of a monitoring well an existing septic system pipe was damaged and needed to be replaced. The contractor replaced the pipe. Respondents felt that the costs of the repair to the leach field should have been covered by the state. In the course of this repair work, the leach field was expanded by approximately one foot on the side closer to the water well. The leach field was located 85 feet from but downgradient of the water supply well serving the property.

Between 1992 and 1994, Respondents did not own the property. The convenience store and deli was open for business between 1989 and September of 1992, and was closed between September 1992 and November 1994.

Respondents provided or attempted to provide monitoring information in 1990, 1992 and in 1994, and have not provided additional monitoring since that time. Based on the 1994 report, monitoring was next required by the Water Management Division to be done in the spring of 1995 but was not done by Respondents. They claim that the monitoring wells are dry much of the time. The monitoring wells are most likely to have water in them in the spring of each year, the period of seasonal high groundwater. Respondents have had the water supply at the property tested for bacterial contamination but not for volatile organic compounds which would disclose the presence of gasoline contamination. The water has tested negative for bacterial contamination.

In 1996, Respondents commenced construction of an addition to the existing store, and announced the planned opening of a 24-seat restaurant. The addition and restaurant constituted a substantial change to the existing development, and therefore required an Act 250 permit and a Water Supply and Wastewater Disposal permit. Respondents had not applied for either permit. In 1996, the Regional Engineer informed Respondents that they were required to apply for a Water Supply and Wastewater Disposal permit prior to opening, but allowed them to open on the condition that they obtain the permit as soon as possible and install an approved system according to the permit.

On July 3, 1996, Respondents applied for the Water Supply and Wastewater Disposal permit. On July 15, 1996, the Regional Engineer sent a letter to Respondents and to their consulting engineer requesting additional information. Respondents believed at this time, due to conversations with their own engineer, that they could be eligible for a waiver of the 100-foot isolation distance between the water supply and the septic system, as the water supply was upgradient of the septic system. In fact, such a waiver was not available to them, but neither their engineer nor the Agency personnel advised Respondents of that fact at that time. Respondents moved to New Hampshire on March of 1998, but did not arrange with the U.S. Postal Service for the forwarding of their mail. Rather, they arranged with their lessee to forward the mail, but the lessee did not always forward the mail, or forward it in a timely fashion, and Respondents did not always receive mail addressed to the Topsham property.

More than a year and a half later, on February 9, 1998, the Regional Engineer sent a letter to Respondents at the Topsham property advising them that the application remained incomplete and would be denied if the information was not received by the end of February. On May 11, 1998, the Regional Engineer denied the permit application and sent a ' Certificate of Noncompliance' to Respondents at the Topsham property. The leach field would not have been approvable for the 24-seat restaurant, as it was too small for that size restaurant and was closer to the water supply than the required 100-foot isolation distance.

On May 12, 1998, the Regional Engineer sent them a Notice of Alleged Violation by certified mail. This notice was sent to the property and was signed for; but no party was able to identify the signature. Respondents assert that they did not receive this notice at this time. The Notice of

Alleged Violation stated as the violations that Respondents were operating a restaurant and had reconstructed a leach field without obtaining a Water Supply and Wastewater Disposal permit for the work. It directed them to hire a Vermont-registered engineer by June 1, 1998, to submit a permit application by June 19, 1998, to construct the approved system by August 14, 1998 and to submit a report by September 11, 1998.

On July 31, 1998, the Regional Engineer received a letter from Respondents stating that the restaurant was closed and requesting a letter stating that Respondents were in full compliance with state law. Respondents believed, from their interpretation of a conversation with the Regional Engineer, that the building had regained its grandfathered status as a country store and deli with a second floor residence. On September 17, 1998, the Regional Engineer replied to Respondents, stating that the reconstruction of the leach field still required a corrective permit from the Agency. Respondents returned to Vermont to live at the Topsham property on December 31, 1998. Over the course of the spring and summer of 1999, various Agency representatives discussed the status of the property with Respondents, and clearly advised them that the system was too small and too close to the well to qualify for a Water Supply and Wastewater Disposal permit for a 24-seat restaurant, and that the addition still required an Act 250 permit. Respondents submitted an Act 250 application in September 1999, that was never deemed to be complete, and submitted an unsigned Water Supply and Wastewater Disposal application in June of 2000.

Approximately $850 in investigators' time and expenses has been expended by the Agency on this matter. As of the fall of 2000, Respondents were living in the building as their residence and the property was up for sale. Had it not been for the building of the addition and the opening of the restaurant, Act 250 jurisdiction would not have attached to this property and no Water Supply and Wastewater Disposal permit would have been necessary to repair the septic system for residential use (or for the grandfathered use as a store and deli).

Conclusions as to Violation (10 V.S.A. § 8012(c)(1)):

The statute requires this Court to determine whether a violation has occurred, 10 V.S.A. § 8012(b)(1), independently of reviewing and determining anew a penalty amount. 10 V.S.A. § 8012(b)(4).

By failing to monitor the groundwater on the site since 1994 for gasoline-related contamination, Respondents have violated 10 V.S.A. § 6615(b).

By constructing the addition for the restaurant without first obtaining an Act 250 permit, Respondents violated 10 V.S.A. Chapter 151 (Act 250) and Environmental Board Rule 2(G), triggering the jurisdiction of Act 250. However, as the restaurant is closed and the property is in use for residential purposes, the Act 250 program would accept an amendment to the Act 250 permit application for the construction for residential use only.

By constructing the addition for the restaurant and repairing the sewer pipe and leach field without first obtaining a Water Supply and Wastewater Disposal permit, Respondents violated 10 V.S.A. § 1953 and the Environmental Protection Rules. However, as the restaurant is closed

and the property is in use for residential purposes, the Water Supply and Wastewater Management program would accept an amendment to the application verifying that the leach field had been restored to its prior status and that it is in use for residential use only.

Determination of Order and Penalty (10 V.S.A. § 8012(c)(3)):

The Administrative Order requires Respondents to hire an environmental consultant to perform the groundwater monitoring and report to the Waste Management Division; requires Respondents also to sample the drinking water source on the property for coliform and for volatile organic chemicals; to hire a Vermont-registered engineer to prepare water supply and wastewater disposal plans for the property, and to construct and complete a system and report to the Agency; and to submit a complete Act 250 permit application for the addition and improvements. Under 10 V.S.A. § 8012(b)(2), the Court may affirm, or vacate and remand to the secretary such remedial orders, and is directed to vacate and remand an order under this subdivision when a violation is found to exist but the procedure contained in the order is not reasonably likely to achieve the intended result.

With regard to the well water monitoring, the procedure in the order is reasonably likely to obtain the intended result, but because the property had reverted to residential use, it may be possible for the well water monitoring to satisfy the Agency's need for groundwater monitoring as well. It is hereby ORDERED and ADJUDGED that Paragraph G of the Administrative Order is affirmed, and that Respondents shall comply with Paragraph G of the Administrative Order with respect to sampling the water supply source, and shall submit the results of that sampling both to the Regional Engineer and to the Waste Management Division of the Agency, which shall thereafter establish a monitoring regime appropriate to the property in its present use. It is hereby ORDERED and ADJUDGED that Paragraphs B, C and D of the Administrative Order are vacated and remanded, because the procedure is not likely to achieve the intended result of establishing a monitoring schedule appropriate to the past contamination and present use of the property. The monitoring regime to be established on remand may include monitoring of the drinking water well and/or the monitoring well, and may include a differential monitoring regime while the property is in residential use only, with more extensive or more frequent monitoring to occur if the property is later proposed for any non-residential use. This remand is without prejudice to any remediation to be required in the future by the Agency, which may be the subject of future administrative orders.

It is hereby ORDERED and ADJUDGED that Paragraphs E, F, H, and I of the Administrative Order are vacated and remanded, because the procedure is not likely to achieve the intended result of establishing whether the repaired leach field restored it to the status prior to the damage, so that it may be approved as appropriate to the present residential use of the property. On remand, the Agency may require that Respondents submit evidence of the extent of restoration sufficient to allow the Agency to determine that it was restored as appropriate to the present residential use of the property, may require a complete application to be submitted by Respondents or their successors if and when the property is proposed for any non-residential use, and may require that notice to that effect be placed in the land records for this property.

It is hereby ORDERED and ADJUDGED that Paragraph J of the Administrative Order is affirmed, with the understanding as expressed at trial that Respondents may amend their application to request approval of the addition for the present residential use of the property only, which may require a more minor application than for the restaurant use. As a condition to any approval of the addition for the residential use of the property, of course, the District Commission will be free to require that a complete Act 250 application be submitted by Respondents or their successors if and when the property is proposed for any non-residential use, and may require that notice to that effect be placed in the land records for this property.

The Court must also review and determine anew an appropriate penalty amount for the violations by applying the eight criteria set forth in 10 V.S.A. § 8010(b). 10 V.S.A. § 8012(b)(4).

The Secretary seeks a penalty of $5250, but did not break down the proposed penalty according to the § 8010(b) criteria. Respondents ask the Court to forego a penalty in view of their considerable expenses on this property, and their financial reverses.

First we must note that for a civil penalty to withstand constitutional scrutiny, it must be basically remedial in effect, rather than punitive. The methodology inherent in the statute and applied by this Court is to remove the economic benefit gained from the violation, in order to carry out the statutory purpose of preventing the unfair economic advantage obtained by persons who operate in violation of environmental laws, 10 V.S.A. § 8001(2) and § 8010(b)(5), and then to apply the remaining statutory factors to determine what additional penalty is needed, or whether mitigating factors should reduce any element of the penalty. That is, the entire economic benefit first must be removed to carry out a primary purpose of the Uniform Environmental Enforcement Act: to make it less expensive to comply with the law than to violate it. Accordingly, if Respondents had not received permission to open first and apply later, we would have looked at any net profit they received from the operation of the restaurant. However, as they were allowed to open, that factor is not presented by this case. Moreover, the avoided costs of preparing an adequate Act 250 permit application and an adequate Water Supply and Wastewater Disposal permit application no longer apply once Respondents had closed the non-residential uses of the property. The avoided costs of failing to monitor after 1994, however, should be recognized as an economic benefit accruing to Respondents. We will therefore impose a penalty for that economic benefit in the amount of $1,453, the difference between the amount they had already paid towards the contamination cleanup, and their $10,000 deductible in the cleanup program.

The failure to monitor for the potential gasoline contamination presents at least a potential impact on the environment, and on the health of any users of the water source on the property. § 8010(b)(1). We find no mitigating circumstances other than the original circumstances of the breaking of the sewer line, and no unreasonable delay by the secretary in seeking enforcement, § 8010(b)(2). The circumstances that required Respondents to close the commercial uses of the building are unfortunate, but do not relate to the claimed violations, only to their financial circumstances. Respondents knew, at least since 1999, that the violations existed § 8010(b)(3). They had no prior record of non-compliance. § 8010(b)(4). The Secretary seeks $850 of actual costs of enforcement in the present case. § 8010(b)(7). Respondents applied promptly for a remedial permit after they were made aware of the elevation violation. § 8010(b)(8). The cost of

the monitoring required by the order is sufficient to achieve deterrence of future violations if the property remains in residential use. § 8010(b)(6). Accordingly, the Court will impose a penalty keyed in large part to Respondents' or their successors' use of the property for other than residential use.

Accordingly, taking all these factors into account, and based on the findings, conclusions, and reasoning of this decision, it is hereby ORDERED that:

Paragraph A of the September 14, 1999 Administrative Order is vacated. On or before sixty days from the date of this order, Respondents shall pay a penalty of $2,303, representing the avoided costs of the monitoring violation, and the State's actual costs of enforcement. All penalty amounts shall be paid to the State of Vermont, to be deposited in the general fund pursuant to 10 V.S.A. § 8010(e). Respondents may discuss with the Agency the establishment of a payment schedule other than that established by this order, and may submit any agreement as a stipulated amendment to this order.

Rights of Appeal (10 V.S.A. § 8012(c)(4) and (5)):

WARNING: this decision will become final if no appeal is requested within 10 days of receipt of this decision. Respondent and the Secretary of the Agency of Natural Resources have a right to appeal this decision. The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to the exceptions in Vermont Rules of Civil Procedure (V.R.C.P.) 76(a)(3) and (d)(5). Within 10 days of receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of this Court, together with the applicable filing fee. Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276. An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court. 10 V.S.A. § 8013(d). A party may petition the Supreme Court for a stay under the provisions of V.R.C.P. 62 and V.R.A.P. 8.

Done at Barre, Vermont, this 15th day of June, 2001.


_____
Merideth Wright
Environmental Judge

# Footnotes